## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) CAMRON MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: CIV-2015-371-C |
| | ) | |
| 1) TRAVIS W. WATKINS, and | ) | |
| 2) TRAVIS W. WATKINS, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE AND OBJECTION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to FED.R.CIV.P. 56, Plaintiff Camron McAllister, for his response to Defendants Travis W. Watkins and Travis W. Watkins, P.C.'s (collectively "Watkins") Motion for Summary Judgment [Doc No. 89], respectfully shows the Court as follows:

### GENERAL STATEMENT OF THE CASE

Plaintiff Camron McAllister's tax issues arose with the IRS when he and his privately held company, National Sales, L.L.C., were audited and then assessed with back taxes, penalties and interest by the IRS. The audit arose out of Plaintiff's operation of a number of Cricket Wireless cellular stores for which he was required to maintain bank accounts in which pass through receipts flowed to and were received by Cricket, the cell phone carrier. The vast majority of the income that was imputed to Plaintiff by the IRS was not, in fact, income he received, but money that passed through the bank accounts to Cricket Wireless.

Plaintiff entered an Engagement Agreement with Defendants Travis W. Watkins and Travis W. Watkins, P.C. (collectively "Watkins) on August 13, 2012.  Per the Engagement Agreement, called the "VIP Package," Plaintiff made an initial payment to Watkins of $10,000.00 on September 13, 2012, with two subsequent payments of $20,000.00 each due on October 13, 2012 and November 12, 2012, for a total payment to Watkins of $50,000.00. Thereafter, Plaintiff alleges that Watkins was negligent in the performance of his professional duties owing to Plaintiff, including, among other things, Watkins' nearly two-year delay in preparing Plaintiff's tax returns; Watkins' failure to make necessary and appropriate filings on Plaintiff's behalf; and Watkins' failure to provide necessary tax and income documentation to the IRS, all of which would have permitted Plaintiff to favorably resolve his tax liability issues with the IRS.

## I.   SUMMARY OF MATERIAL FACTS PRECLUDING SUMMARY JUDGEMENT

Defendants cite to a number of "undisputed, material facts" which are, in fact, not material to the Court's consideration on a motion for summary judgment.  While a number of Defendants material facts are factually inaccurate, or simply untrue, other material facts cited by Defendants are irrelevant to the issues before the Court, *to wit*, are there material facts that are in dispute regarding the standard of care provided by Defendants in their performance of tax representation services on Plaintiff's behalf before the IRS.  Plaintiff submits there are multiple issues in dispute the preclude summary judgment, and offers the following in response to Defendants' Motion:

-2-

1.      Disputed.  The tax delinquency for tax years 2006-2008 was $2,135.820.25, and consists of tax years 2004-2011. (Def's Exhibit 1; Plaintiff's Exhibit 1, Affidavit of Camron McAllister at ¶6).

2.      Admitted.

3.      Admitted.

4       Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Disputed.  The Engagement Agreement Plaintiff entered with Watkins was called the "VIP Package."   While the immediately pressing issue was preparation of Plaintiff's 2009, 2010 and 2011 tax returns, the Watkins VIP Package includes the following additional language: "VIP PACKAGE:   EVERYTHING IN THE INVESTIGATION PACKAGE PLUS... Direct access to attorney Travis Watkins via cell phone and email, unlimited tax return preparation, and... **ANYTHING AND EVERYTHING NECESSARY TO RESOLVE YOUR TAX PROBLEMS. NO LIMITS. NO EXCLUSIONS**." (Watkins' Exhibit No. 89-5; Plaintiff's Exhibit 1, Affidavit at ¶4).

10.      Admitted.

11.     Admitted, although the balance of the fee was not yet due. (Watkins' Exhibit No. 89-5; Plaintiff's Exhibit 1, Affidavit at ¶3).

12, 13, 14.     Disputed.   Defendants threatened to terminate the attorney-client relation on November 8, 2012, when Plaintiff began questioning what actions Defendants had taken on Plaintiff's behalf with the initial $10,000.00 payment.   Although Plaintiff was concerned about what work had been done and would be done, Plaintiff paid the balance of $40,000.00 to Watkins per the agreement. (Plaintiff's Exhibit 1, Affidavit at ¶8).

15.     Disputed.   Plaintiff delivered all requested information and documentation to Watkins from the inception of the representation agreement, including all bank statements and all other documents necessary for the preparation of Plaintiff's tax returns.   Moreover, contrary to Defendants' assertions, hearings before the IRS, such as, for example, the hearings scheduled for February 4, 2013, March 4, 2013, and March 26, 2014, were not rescheduled with Plaintiff's agreement or knowledge.   Rather, Defendants had not yet prepared Plaintiff's tax returns for the 2009, 2010 and 2011 tax years, which would have been necessary for Defendants to properly represent Plaintiff before the IRS.   The IRS will not consider an Offer-in-Compromise Doubt as to Liability with outstanding, unfiled tax returns.   Plaintiff's 2009, 2010 and 2011 tax returns were not completed until March of 2014, almost two years after Plaintiff retained Defendants. (Plaintiff's Exhibit 1, Affidavit at ¶¶ 9and 10; Plaintiff's Exhibit 2, Expert Report of H. Craig Pitts).

16.     Admitted.

-4-

17.     Disputed.  (Plaintiff's Exhibit 1, Affidavit at ¶¶ 9and 10).

18.     Admitted.

19.     Disputed to the extent that Plaintiff had already produced all documents necessary for Defendants to represent Plaintiff before the IRS. (Plaintiff's Exhibit 1, Affidavit at ¶ 9).

20.     Disputed to the extent that Plaintiff had already produced all documents necessary for Defendants to represent Plaintiff before the IRS. (Plaintiff's Exhibit 1, Affidavit at ¶ 9; Plaintiff's Exhibit 2, Expert Report of H. Craig Pitts).

21.     Admitted.

22.     Disputed.  Plaintiff's tax dispute with the IRS should have been resolved as an audit reconsideration.  Plaintiff's Exhibit 2, Expert Report of H. Craig Pitts).

23, 24, 25.     Disputed in part.  Hearings before the IRS were not cancelled as a result of any action or inaction of Plaintiff, and Plaintiff was not agreeable to withdrawing his initial offer-in-compromise.  As a result of Defendants' unilateral withdrawal of the Doubt as to Liability Offer- in-Compromise, Plaintiff cannot now appeal the withdrawn Offer-in-Compromise.   Through the Doubt as to Liability offer, Watkins could have easily demonstrated to the IRS that Plaintiff did not earn the income imputed to him.  Instead, Defendants withdrew the offer and unilaterally decided a Doubt as to Collectability should be filed with the IRS. (Plaintiff's Exhibit 1, Affidavit at ¶¶ 10 and 11; Plaintiff's Exhibit 2, Expert Report of H. Craig Pitts).

-5-

26.     Admitted.

27.     Admitted.

28.     Disputed.  The IRS learned about Watkins' withdrawal of the Doubt as to Liability prior to July 8, 2014.  By Watkins' own admission, the Doubt as to Liability was withdrawn on April 2, 2014. (Plaintiff's Exhibit 1, Affidavit at ¶12; Def's Exhibit 3, paragraph 25).

29.     Disputed.  The IRS did not receive Plaintiff's Doubt as to Collectability on August 25, 2014.  The IRS received the Doubt as to Collectability on May 10 or 11, 2014, it having been sent by certified mail from Watkins' office on May 9, 2014. (Plaintiff's Exhibit 1, Affidavit at ¶13; Plaintiff's Exhibit 3, Certified Mailing to IRS on May 9, 2014).

30.     Disputed.  On June 3, 2014, Plaintiff advised Defendants that he had moved and that the IRS needed to be notified of his new address.  It was important that the IRS had Plaintiff's new address because the IRS typically copies taxpayers on all correspondence in their case.  Further, on October 31, 2014, Plaintiff contacted Defendants after noticing that he had not received any correspondence from the IRS in some time.  Plaintiff was told that his address change has been submitted to the IRS, but that, curiously, Plaintiff should not contact the IRS.  Plaintiff later learned from the IRS that Watkins never submitted a change of address for me. (Plaintiff's Exhibit 1, Affidavit at ¶¶ 14 and 15; Plaintiff's Exhibit 2, Expert Report of H. Craig Pitts; and Def's Exhibit 14, noting that Plaintiff's Offer-in-

Compromise had been closed for failure to provide requested documentation, and that Plaintiff's address still needed to be updated).

31, 32.        Disputed.  While the IRS made multiple attempts to procure additional information from Defendants, the IRS's calls and requests went ignored by Defendants, and, as a result, Plaintiff's Offer-in-Compromise was rejected by the IRS.  (Plaintiff's Exhibit 1, Affidavit at ¶¶ 16 and 17).

33-38.        Admitted and/or without information to dispute.

47.        Disputed.  Plaintiff's Offer-in-Compromise submitted by Defendants was rejected because of Defendants failure to provide requested information and documentation to the IRS. (Def's Exhibit 14, noting that Plaintiff's Offer-in-Compromise had been closed for failure to provide requested documentation, and that Plaintiff's address still needed to be updated).

52.        Disputed.  Plaintiff has not settled his tax debt with the IRS through his new representatives.   To the contrary, Plaintiff's new tax representatives efforts to settle Plaintiff's tax debt have been thwarted by Defendants' own actions. (Plaintiff's Exhibit Exh. 4, Facsimile from IRS regarding Defendants' Interference and Suspension of Plaintiff's offer).

## II.    ARGUMENT AND AUTHORITIES

### A.    THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is particularly ill-suited to cases which necessarily require determinations of intent and often require credibility determinations by a trier of fact following a full trial and the observation of witnesses and their demeanor. *Baum v. Gilliman*, 648 F. 2d 1292, 1296 (10th Cir. 1981) ("Any action examined under Rule 56 which raises real issues of credibility, motive or intent is not suitable [for summary judgment] whatever the nature of the cause may be."). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986): "[Rule 56, F.R.C.P.] by no means authorizes a trial on affidavits.  Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment. . .The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. (Citations omitted).  Nor do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is a reason to believe that the better course would be to proceed to a full trial. . ." (Internal citations omitted).

Moreover, summary judgment is only appropriate when no issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56©. *Allstate Ins. Co. v. Brown*, 920 F. 2d 664 (10th Cir. 1990). The Court should view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party.

*Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 670 (10th Cir. 1998).  The burden is on the Defendant to prove there are no controverted facts.  Id. at 670.  "Credibility determination, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000) (citations omitted).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Id.*

The 10th Circuit has consistently ruled that a Plaintiff need not prove his case at the summary judgment stage; rather, the Plaintiff must merely present evidence of the existence of a genuine issue of material fact. *See Goodwin v. GM Corp.*, 275 F.3d 1005, 1012, fn 7 (10th Cir. 2002) ("Goodwin need not "show" or "prove" or "establish" anything to defeat General Motors' summary judgment motion.  Instead she must merely demonstrate the existence of a genuine issue of material . . . fact.").  Ultimately, the burden is on the defendant to demonstrate that it is entitled to summary judgment "beyond a reasonable doubt."  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884 (10th Cir. 1985).  Pursuant to these clearly enunciated standards, Plaintiff respectfully submits that Defendants are not entitled to summary judgment, and Plaintiff therefore respectfully submits Defendants's motion should be denied in its entirety.

In support of Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff has attached his Affidavit wherein Plaintiff outlines a multitude of deficiencies in

Defendants' representation of him before the IRS.  Plaintiff has also submitted as Exhibit 2 an expert report of H. Craig Pitts wherein Plaintiff's expert outlines a number of breaches of the standard of care.  In particular, Plaintiff's expert notes the Defendants' excessive delay in completing and filing Plaintiff's tax returns, taking almost two (2) years to do so.  Plaintiff's expert notes that not filing the outstanding returns puts the taxpayer at a huge disadvantage when attempting to settle tax disputes with the IRS.

Plaintiffs expert also opines that Defendants should not have initially filed an Offer-in-Compromise, but, rather, should have requested an audit reconsideration.  An audit reconsideration would have resulted in a correct income figure for Plaintiff rather than showing an erroneous, inflated income figure.  Plaintiffs expert further notes Defendants' failure to prepare for IRS hearings, resulting in withdrawals of the Plaintiff's settlement offers, and then ultimate dismissal of Plaintiff's Offer-in-Compromise.  Finally, Plaintiff's expert notes the Defendants' failure to file an update of Plaintiff's address, the result of which was that Plaintiff did not receive IRS correspondence, particularly noting the impending dismissal Plaintiff's Offer-in-Compromise.

Finally, as Plaintiff has asserted, he provided the Defendants with all documents necessary for the Defendants to represent him before the IRS.  In this regard, contemporaneously herewith, Plaintiff is filing a notice of conventional filing so that the Court might review documentation (such as multitude of bank statements, income statements,

-10-

and tax information) provided by Plaintiffs to the Defendants, and which Defendants should

have presented to the IRS.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion for

Summary Judgment be denied.

Dated: October 2, 2016

RAPHAEL T. GLAPION, P.C.

  s/  Raphael  T.  Glapion
Raphael T. Glapion, OBA# 19466
701 N.W. 13th Street
Oklahoma City, OK 73103-2206
Office: 405/521-8900
Cell: 405/464-5998
Fax:405/604-9054
Email:rtglapion@myoklahomacounsel.com
ATTORNEY FOR PLAINTIFF

<u>**Certificate of Service**</u>

      I hereby certify that on October 2, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Michael W. Brewer | John Alexander, *pro se* |
| Jeffrey D. Scott | 933 N.E. 69th Street |
| Leslie L. Vincent | Oklahoma City, OK 73105 |
| HILTGEN & BREWER, P.C. | *Third-Party Defendant* |
| 9505 N. Kelly Avenue | |
| Oklahoma City, OK 73131 | |
| *Attorneys for Defendants Travis W.* | |
| *Watkins and Travis W. Watkins, P.C.* | |

Rhonda Nixon, *pro se*
709 Linsey Lane
Moore, OK 73160
*Third-Party Defendant*

      s/ Raphael T. Glapion
     Raphael T. Glapion