**R&P RUBENSTEIN & PITTS** PLLC

ATTORNEYS AT LAW

1503 East 19th Street  
Edmond, OK 73013

www.oklawpartners.com

(405) 340-1900  
(405) 340-1001 fax

April 25, 2016

Ward & Glass, LLP  
Attn: Stan Ward  
1601 36th Ave. NW  
Norman, OK  73072

Re: Travis Watkins and his representation of Cameron McAllister before the IRS

Mr. Ward:

You have retained my services to review the attorney/client relationship between attorney Travis Watkins and his client Cameron McAllister. I have spent some time reviewing the paperwork, Internal Revenue Service ("IRS") filings, correspondence and numerous other documents that relate to this engagement. I have also spoken with Mr. McAllister on several occasions as well as with John Alexander, an employee of Mr. Watkins during the majority of the time of the engagement. Overall, I have found several things that are concerning and fall below what I would consider the acceptable standards of representation. I will briefly address some of my concerns.

McAllister came to Watkins due to problems he was having with the Internal Revenue Service. The problems were tied to a wrongful assessment of income taxes against McAllister as the result of a poorly conducted IRS audit. The engagement letter was executed on August 13, 2012. At that time McAllister had not filed tax returns for tax periods 2009, 2010 and 2011. For the next two years, McAllister knew little about the status of the case or what strategies Watkins was using.

One of the first concerns is the delay in getting these delinquent returns filed. While McAllister had the materials needed to complete these delinquent returns, Watkins chose not to prepare the returns until March of 2014, almost two years later. Having non-filed returns outstanding puts the taxpayer at a huge disadvantage when attempting to settle a tax dispute with the IRS.

Another issue I question is why when originally engaged Watkins chose to file an Offer in Compromise ("OIC") as to *doubt as to liability* rather than request from the IRS an audit reconsideration. An audit reconsideration would have been a quicker and easier way to resolve the tax issues. It also would have resulted in a correct income figure on McAllister's return rather than show an erroneous, inflated income figure. Regardless, Watkins filed the OIC.

April 25, 2016
Page 2

From my review of the file, it appears that as the case progressed and preparations were needed, Watkins refused to allow his employees to prepare for a scheduled meeting with the IRS. Rather, when the meeting time arrived, Watkins requested and was granted a thirty-day extension. He still refused to prepare for the follow-up meeting but rather, on March 26, 2014 when the meeting time arrived, he withdrew the offer! Two years wasted.

Shortly after the 2009, 2010 and 2011 tax returns were filed, Watkins filed the new OIC on May 16, 2014. This filing was made as a *doubt as to collectability*. Two weeks later, on June 3, 2014, McAllister contacted Watkins' office to inform them he had moved and thus the IRS needed to be notified of the new address. This is important as the IRS typically copies taxpayers on all correspondence they send to their Powers of Attorney. Unlike in the past, McAllister noticed he had not received any correspondence from the IRS. On October 31, 2014, he contacted Watkins' office to confirm the IRS had been notified of the new address. He was told the address change had been sent to the IRS and was also shown that the OIC was filed on August 25 of that year. McAllister was of course anxious but was told by Watkins' office "to not contact the IRS."

On February 20, 2015, McAllister was contacted by Watkins' office and told the IRS had returned the OIC due to a "technicality." McAllister and Watkins spoke for the first time about the OIC on February 24. During that conversation Watkins made several statements which were not true:

That he had made multiple attempts to contact McAllister over the past week but to no avail;
That the IRS had "returned" and not "rejected" the OIC for a "bogus reason";
That the IRS did not follow the "Manual";
That the Tulsa IRS office was "corrupt" and thus the OIC, and to refile the OIC there would cost us another 19 months; and
If the OIC was re-filed at the Omaha IRS office it would be a "quick and clean process".
None of these assertions were true.

In fact, McAllister checked his phone records and found there had been no prior calls from Watkins. McAllister called the IRS Memphis office to validate what Watkins had stated. He learned the IRS never received his "change of address" information. Accordingly, he never received any of the IRS correspondence regarding the OIC. He was told the IRS had made three attempts to collect a $183.00 processing fee owed on the OIC. It was the failure to pay this fee that resulted in the rejection. The IRS had in fact followed the Manual. Further, there is no evidence the Tulsa IRS offices are corrupt, and OICs are not processed through Omaha, Nebraska.

Of course, McAllister would have been happy to pay the required fee if he knew about it. Unfortunately, Watkins' failure to file the "change of address" form with the IRS left McAllister out of the loop on all IRS correspondence. The irony in all of this is that, due to McAllister's low income level, he would have easily qualified for a Fee Waiver if Watkins would simply have filed the proper paperwork.

April 25, 2016
Page 3

All of the above facts show patterns of behavior that fall below the standard of care clients should expect from the attorney. Several rules of conduct which come to mind include an attorney's requirement to communicate with a client, an attorney's requirement to provide competent representation, the need for an attorney to use reasonable diligence and promptness, and, finally, an attorney should not misrepresent facts to a client.

Please let me know if you have any questions,

Sincerely,

H. Craig Pitts